**SIGNED.**

Dated: February 10, 2011



_____
**JAMES M. MARLAR**
**Chief Bankruptcy Judge**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>FORT LOWELL RETAIL, LLC,<br><br>Debtor.<br><br>FORT LOWELL RETAIL, LLC,<br><br>Plaintiff,<br>vs.<br><br>GREAT WESTERN BANK,<br><br>Defendant. | Chapter 11<br><br>No. 4:-10-bk-29820-JMM<br><br>Adversary No. 4:11-ap-00218-JMM<br><br>**MEMORANDUM DECISION** |

On February 9, 2011, the court considered the Debtor's application for a temporary restraining order (ECF No. 1). In its Complaint, the Debtor seeks to prevent foreclosure of its real estate, due to the court's having lifted the stay on January 26, 2011. No appeal has yet been taken of that decision.

# CAN THE DEBTOR CONFIRM A PLAN?

## A. General Discussion

The Debtor, a single-asset real estate entity, filed a Chapter 11 proceeding on September 17, 2010. It owns a strip shopping center just south of the Fort Lowell and Campbell intersection, which is leased to about 67% of its capacity.

The Debtor has a single secured creditor, Great Western Bank, holding a deed of trust on the property. Its debt is listed in Schedule A as being $2,464,526. The Debtor listed, also in Schedule A, the real property to be worth $575,000. Its appraiser valued the property at $780,000 (Ex. 1).

The scheduled unsecured debtors are four in number and they total $61,700. This figure does not include the substantial unsecured portion of Great Western's debt, which on this record is approximately $1,684,526. Great Western's debt is not listed as being in dispute. Thus, Great Western holds 96.64% of the total unsecured debt against the Debtor.

The Debtor's plan proposes to place three of its four creditors into an "administrative convenience" class, and pay them 50% of their debts. Those creditors are:

| **Creditor**         | **Debt** | **50%** |
|----------------------|----------|---------|
| Beach, Fleishman CPA's | $2,200  | $1,100  |
| Safrin Trust         | 5,000    | 2,500   |
| Transwest Properties | 2,500    | 1,250   |
|                      | $9,700   | $4,850  |

The only other secured creditor, EZ Trading, is scheduled at $52,000. The plan proposes to pay it, along with Great Western's unsecured obligation, only 2%.

Great Western has not made the secured election of § 1111(b)(2). Thus, it is secured to the extent of $780,000, and unsecured in the amount of $1,684.526. It opposes the Debtor, and seeks to foreclose. On this record, it has shown no disposition to support the Debtor's plan. It

therefore controls both the secured and unsecured classes, and would likely reject the plan, in both classes, when it comes to a vote.

Thus, presuming the Debtor obtains the affirmative vote of a separate unsecured class, who stand to be paid $4,850, is the Debtor's plan likely to be confirmed when the $2,464,526 of secured and unsecured debt disfavor it? While theoretically anything is possible, it is not likely to occur here.[1]

### B. **Specific Concerns**

The basis for the instant lawsuit is to prevent foreclosure of the primary (and only) asset of the Debtor, which is set to occur prior to any hearing on confirmation of the Debtor's plan. If the foreclosure proceeds, there will be nothing left to reorganize. The Debtor agrees that, to obtain an injunction, it must show that it has a reasonable likelihood of success in its confirmation hearing.

The court concurs that this is the correct standard. However, it is unlikely that the Debtor's plan can be confirmed, for at least the following reasons.

- There are only four unsecured creditors in the case, not including Great Western's deficiency.
- The Debtor proposes to isolate three of those creditors, each of whom have claims below $5,000. These creditors the Debtor calls "administrative convenience" and proposes a 50% payment, or only $4,850.

---

[1] A debtor must have, at a minimum, votes of any class totaling 51% in number and two-thirds in dollar amount to carry the class. § 1126(c).

3

- This class, then, becomes the sole impaired consenting class, which then the Debtor maintains will carry confirmation of a plan which stretches out a secured claim of approximately $780,000, and pays the unsecured deficiency of $1,684,526 only 2% of its claims, or $33,690.52.
- The Debtor cannot get past § 1129(a)(7), which requires that creditors will receive more under the plan than on liquidation. In a liquidation, the secured creditor, at a minimum (if it bids in and recovers the collateral at a trustee's sale) will get the property ($780,000) and the right to collect rents from existing and future tenants. Rents collected in December, 2010, were $13,460.23 (ECF No. 32). Annualized, the rents collected would be $161,522.76. Even after payment of routine expenses, Great Western would clearly net more than $33,690.52.
- There is no reason to place the three unsecured creditors into a separate class, except to manipulate voting. The plan therefore fails to properly classify claims (§ 1122), and thus fails compliance with §§ 1129(a)(1) and (2). In addition, this manipulation is indicative of bad faith, also failing the test of § 1129(a)(3) (good faith).
- With Great Western controlling the secured and unsecured classes, after inclusion of the "administrative convenience" class back into the general body, the Debtor has no impaired consenting class, and fails the requirement of § 1129(a)(10).
- From the existing record, it is also doubtful that the Debtor can overcome the strictures of the "absolute priority rule." § 1129(b)(2)(B)(ii). The proposed new capital infusion of about $105,000 is based on the annual revenues generated, simply too low.

In summary, the Debtor has not shown a likelihood that its plan will have a successful outcome.

Thus, the equities tilt in favor of Great Western and against the Debtor, since it appears unlikely that the Debtor can confirm this plan. It may also be, if the evidence further

evolves, that this case is, in essence, only a two-party dispute which would mandate dismissal as a bad faith filing. See In re Landmark Capital, 27 B.R. 273 (Bankr. D.Ariz. 1983).

## **COLLATERAL ATTACK**

The instant lawsuit appears to be, essentially, a collateral attack on the stay relief order (Admin. ECF No. 35). That order, in turn, was based upon a clear statute with defined timelines, as well as a stipulation by the same parties to the instant lawsuit. As the matters involved in this suit tread the same ground as that trod in the stay relief hearing, unless stay relief is reversed on appeal, that ruling is the law of the case for now. If the stay relief order becomes final, its status will elevate to res judicata.

## **CONCLUSION**

A separate order will be entered DENYING the Debtor's request for a temporary restraining order.

DATED AND SIGNED ABOVE.